# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **KRISELDA J. WASHINGTON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil Action No. 3:10-cv-00044 |
| v. ) | Judge Wiseman / Knowles |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 14. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 18.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her applications for DIB and SSI on September 27, 2006, alleging that she

1

had been disabled since June 1, 1992, due to depression, bipolar disorder, shoulder problems, memory loss, inability to concentrate, a pinched nerve, a torn rotator cuff, and a history of polysubstance abuse. Docket No. 12, Attachment ("TR"), TR 13, 59, 63, 110-120. Plaintiff's applications were denied both initially (TR 58, 60) and upon reconsideration (TR 62, 64). Plaintiff subsequently requested (TR 78) and received (TR 84-105) a hearing. Plaintiff's hearing was conducted on June 16, 2009, by Administrative Law Judge ("ALJ") John R. Daughtry. TR 24-56. Plaintiff and vocational expert ("VE") Kenneth Anchor appeared and testified. *Id.*

On July 29, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 8-23. Specifically, the ALJ made the following findings of fact:

> 1. The claimant met the insured status requirements of the Social Security Act through March 31, 1997.
>
> 2. The claimant has not engaged in substantial gainful activity since June 1, 1992, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following impairments: bipolar disorder; degenerative joint disease (left shoulder); and history of polysubstance abuse (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) which includes the ability to lift and/or carry 30 pounds occasionally and 15 pounds frequently; stand and/or walk up to 7 hours in an 8 hour

workday; sit up to 6 hours in an 8 hour workday; can engage in unlimited pushing/pulling and can otherwise perform a full range of light work. The claimant can understand, remember, and carry out simple, low level detailed directions; can maintain concentration and persistence necessary to perform simple and low-level detailed tasks with normal supervision; no production rate, pace, assembly line work; can have occasional contact with the general public; can interact with coworkers and supervisors; may require infrequent direct non-confrontational supervision; and can adapt to infrequent changes.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. Born on February 10, 1966, the claimant was 26 years old on June 1, 1992, and is currently 43 years old which is defined as a younger individual age 18-49 (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 1992, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 13-22.

On August 4, 2009, Plaintiff timely filed a request for review of the hearing decision. TR 4-7. On November 21, 2009, the Appeals Council issued a letter declining to review the case

3

(TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner

4

if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973)).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

5

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: (1) not according controlling weight to the opinion of treating physician Dr. Gardner Dixon; (2) evaluating Plaintiff's mental impairments; and (3) evaluating Plaintiff's credibility. Docket No. 15. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can

7

Case 3:10-cv-00044 Document 19 Filed 07/20/10 Page 7 of 18 PageID #: 85

be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Weight Accorded to the Opinion of Dr. Dixon

Plaintiff argues that the ALJ erred in not according controlling weight to the opinion of treating physician Dr. Gardner Dixon. Docket No. 15. Specifically, Plaintiff argues that Dr. Dixon's opinion expressed in his physical medical source statement deserves controlling weight because it is supported by his treatment records and is not contradicted by other medical evidence in the record. *Id.* Defendant further argues that the ALJ failed to provide sufficiently specific reasons explaining why he did not accord controlling weight to Dr. Dixon's opinion. *Id.*

Defendant responds that the ALJ accorded proper weight to Dr. Dixon's opinion because Dr. Dixon's opinion is not supported by any clinical or diagnostic evidence and is contradicted by "every other piece of evidence in the record." Docket No. 18.

Dr. Dixon treated Plaintiff for an extensive period of time. *See* TR 577-602. On August 15, 2008, Dr. Gardner completed an assessment of Plaintiff's physical capabilities. In this assessment, Dr. Gardner opined that Plaintiff could occasionally lift ten pounds with her right hand, but could never lift more; could never lift any weight with her left hand; could occasionally carry ten pounds with her right and left hands, but could never carry more; could perform reaching, handling, fingering, feeling, pushing, and pulling activities each for less than

8

one hour out of an eight-hour workday; could sit, stand, and walk each for one hour at a time out of an eight-hour workday; could sit, stand, and walk each for one hour total out of an eight-hour workday; could occasionally operate foot controls with her feet; could never engage in any postural activities; could occasionally operate a motor vehicle; and could never be exposed to unprotected heights, moving mechanical parts, humidity, wetness, dust, odors, fumes, extreme cold, extreme heat, vibrations, or noise. TR 594-599. Dr. Gardner noted that Plaintiff suffered from severe pain and fatigue. TR 600.

The ALJ declined to accord significant weight to Dr. Dixon's opinion regarding Plaintiff's physical capabilities because his "limitations are too restrictive when considering the preponderance of the evidence in the record." TR 20. Contrary to Plaintiff's assertions, Dr. Dixon's opinion is contradicted by other evidence in the record, including the opinions of Drs. Lloyd Huang and Nathaniel Robinson. As the ALJ noted, the May 9, 2007 consultative examination performed by DDS physician Dr. Huang revealed "normal range of motion of the cervical spine, lumbar spine, elbows, wrists, hips, knees, and ankles," as well as normal hand grip and normal gait. TR 16, *citing* TR 366-370. Dr. Huang found mild to moderate changes in the acromioclavicular joint of Plaintiff's left shoulder. *Id., citing* TR 371. Dr. Huang ultimately opined that Plaintiff was capable of occasionally lifting thirty pounds; frequently lifting fifteen pounds; standing for seven hours out of an eight-hour workday; and sitting for eight hours out of an eight-hour workday. *Id., citing* TR 368-369. Dr. Huang's findings were supported by Dr. Robinson's May 22, 2007 opinion that Plaintiff's physical impairments were not severe, either singly or combined (*Id., citing* TR 371), and by Shade Tree Clinic records, which document a normal musculoskeletal exam with good range of motion, full strength throughout, vague

9

complaints of pain, no joint swelling or redness, no joint deformities, no crepitus on passive motion, and no pain on palpation of upper or lower extremity joints (TR 17).

The ALJ also noted a lack of objective support for Dr. Dixon's opinion.  TR 20.  Specifically, the ALJ found that, "the treatment records from Dr. Dixon as well as subsequent evidence do not provide a basis for the limitations with regard to the hands or the limitations with regard to sitting, standing, [or] walking."  TR 20.   The ALJ also found that Dr. Dixon's "treatment records do not contain descriptions of physical findings to support these limitations and there are no objective records to support the level of restrictions."  *Id.*; *see* TR 577-593.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1)  Examining relationship.  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship.  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
> (3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory

> findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
> ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Dr. Dixon treated Plaintiff for an extensive period of time, a fact that would justify the ALJ's giving greater weight to his opinion than to other opinions. As has been noted, however, Dr. Dixon's opinion contradicts other substantial evidence in the record. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or when it is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when the opinion of a treating physician is not well-supported or when it is inconsistent with other substantial evidence in the record, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions of physicians are inconsistent with each other, the

11

final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). In the instant case, Dr. Dixon's evaluation of Plaintiff is not well-supported and is inconsistent with other substantial evidence in the record. As such, the Regulations do not mandate that the ALJ accord Dr. Dixon's evaluation controlling weight. Accordingly, Plaintiff's argument fails.

## 2. Evaluation of Plaintiff's Mental Impairments

Plaintiff argues that the ALJ erred in evaluating her mental impairments. Docket No. 15. Specifically, Plaintiff argues that "[t]he ALJ erred by concluding that the Plaintiff had no more than moderate mental limitations based solely on her GAF scores." *Id.*

Defendant responds that the ALJ properly evaluated Plaintiff's mental impairments. Docket No. 18. Specifically, Defendant argues that the ALJ did not rely solely on Plaintiff's GAF scores in assessing her mental impairments, but rather, "explicitly evaluated every source in the record that related to Plaintiff's mental impairment: the opinions of Plaintiff's treating doctor, Dr. Lynch; the DDS examining physicians, Drs. Huang and Doran; the staff at MHC; and the non-examining physicians, Drs. Jessee, Robinson, and Livingston." *Id.* (Internal citations omitted.)

The ALJ found that Plaintiff's mental disorder would not result in "more than moderate limitations." TR 19. In reaching this conclusion, the ALJ discussed the opinions of numerous medical sources. The ALJ noted that on March 14, 2007, Dr. Robert Doran, a DDS psychological examiner, assigned Plaintiff a GAF of 60 to 70 and opined that she had mostly mild limitations with moderate limitations in adapting to change. TR 16, 351. The ALJ also noted that on April 4, 2007, Dr. Sally Jessee, a DDS physician, opined that Plaintiff's

12

impairments were not severe. TR 16, 352. The ALJ further noted that on July 20, 2007, Dr. Alan Lynch opined that Plaintiff had moderate limitations from her bipolar disorder and fair to good residual functional mental abilities. TR 16, 377-378. Finally, the ALJ noted that on September 18, 2007, George Livingston, Ph.D., a DDS consultant, opined that Plaintiff had moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace. TR 17, 433.

The ALJ also explicitly discussed Plaintiff's treatment records from the mental health center, noting that she had demonstrated good response to medication, was able to cope with mood swings, performed routine daily activities independently, helped care for her roommate, attended worship services, sang in the church choir, and regularly attended drug relapse prevention class and Narcotics Anonymous meetings. TR 19.

After reviewing the record in its entirety, the ALJ accorded "significant weight" to the opinions of Drs. Lynch and Livingston that Plaintiff's mental impairments imposed moderate limitations. TR 20. The ALJ explained that these opinions were "consistent with and supported by the other substantial evidence of record." *Id.* The ALJ did not accord significant weight to the opinion of Dr. Doran because "subsequent evidence from the mental health center documents a basis for moderate limitations in mental functioning." TR 20.

As has been demonstrated, contrary to Plaintiff's assertion, the ALJ did not rely solely on Plaintiff's GAF scores in concluding that Plaintiff's limitations from her mental impairments were moderate. Rather, the ALJ reviewed and discussed records concerning Plaintiff's mental impairments from numerous medical sources. After reviewing the opinions of all these sources, the ALJ concluded that the weight of the evidence supported a finding that Plaintiff's mental

13

impairments limited her moderately. Substantial evidence supports this determination. Accordingly, the ALJ properly evaluated the degree of limitation imposed by Plaintiff's mental impairments, and Plaintiff's argument fails.

### 3. Evaluation of Plaintiff's Credibility

Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility. Docket No. 15. Specifically, Plaintiff argues that the ALJ did not assess the credibility of Plaintiff's statements according to the required standards. *Id.*

Defendant responds that the ALJ properly evaluated Plaintiff's credibility. Docket No. 18. Specifically, Defendant argues that, in evaluating Plaintiff's credibility, the ALJ properly considered Plaintiff's medical records, Plaintiff's activities of daily living, and his own observations of Plaintiff at her hearing. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the

14

ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(3)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ did not fully credit Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms. Specifically, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce some symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible as documented by records from treating sources and examining sources as discussed ... and as evidenced by [Plaintiff's] presentation and level of independent functioning." TR 21. The ALJ also found that:

> There is no objective evidence or physical findings that support a
> basis for debilitating levels of pain as discussed above. Pain
> occurred intermittently. There was essentially normal range of
> motion with good strength in the upper and lower extremities.

TR 19.

The ALJ considered Plaintiff's allegations of pain in light of the medical evidence in the record. TR 21. The ALJ found that Plaintiff's allegations of pain in her left shoulder were not fully credible, explaining that "[t]here is some pain associated with left shoulder degenerative joint disease but examinations were unrevealing." *Id.* Specifically, the ALJ noted that:

> there was a normal range of motion in other joints and back with
> normal hand grip strength. Gait and station were normal . . .
> Records from Shade Tree Clinic documented a normal
> musculoskeletal exam with good range of motion.

TR 19, 368, 690. Based on this medical evidence, the ALJ found that Plaintiff "has some limitations in function," but that "[t]here is no objective evidence or physical findings that support a basis for debilitating levels of pain." TR 19.

The ALJ also considered Plaintiff's daily activities, or her "level of independent functioning," in finding that her allegations of her symptoms were not credible. *Id.* Plaintiff testified at her hearing that her activities included basic housecleaning, grocery shopping, and driving three times a week to her doctor appointments. TR 32, 39, 41. Plaintiff further testified that she sometimes helped lift her friend, who weighed 170 pounds, out of bed, and that she helped her friend get dressed and get to her appointments. TR 40-41.

The ALJ additionally noted the effect of Plaintiff's medication when considering Plaintiff's allegations. TR 21. Specifically, the ALJ found that Plaintiff's "[s]ymptoms associated with bipolar disorder are improved/controlled with medications." *Id.* The ALJ

16

discussed that treatment notes from the mental health center indicated that Plaintiff had a "good response to medications" with Plaintiff "reporting that she was doing well." TR 19. The ALJ also noted that the record did "not show that there are any side effects from prescribed medication that caused significant limitations of function that lasted for a period of 12 continuous months." TR 19. The ALJ continued, "[r]ather, the evidence demonstrates that [Plaintiff] received a good result from medications when taken as prescribed on a consistent basis." *Id.*

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing the record as a whole, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce some of her alleged

17

symptoms, but that Plaintiff's allegations of the intensity, persistence, and limiting effects of her symptoms were not fully credible. TR 21. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

18

Case 3:10-cv-00044   Document 19   Filed 07/20/10   Page 18 of 18 PageID #: 96